IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-00507-CNS-TPO

LUIS ANGEL MACIAS &
CECELIA FIGUEROA,

    Plaintiffs,

v.

AMERICAN FAMILY INSURANCE COMPANY,
A Wisconsin Corporation registered to do business in Colorado,

    Defendant.

---

# ORDER

---

Before the Court is Defendant American Family Insurance Company's Motion to Dismiss Plaintiffs' Amended Complaint. ECF No. 22. Plaintiffs Luis Angel Macias and Cecelia Figueroa responded, ECF No. 27, and Defendant replied. ECF No. 28. For the following reasons, the Court DENIES Defendant's motion.

## I.    BACKGROUND[1]

Defendant issued Homeowner's Policy No. 4106558499-1 (the Policy)[2] to

---

[1] For purposes of this motion, the Court accepts as true, and views in the light most favorable to Plaintiffs, all well-pleaded factual allegations in the Amended Complaint (ECF No. 22). *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Court limits its recitation to the allegations necessary to resolve Defendant's motion.

[2] When deciding a Rule 12(b)(6) motion, a court generally confines its analysis to the four corners of the complaint. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). If a court intends to rely on evidence outside the complaint, it typically must convert the motion to dismiss to a motion for summary judgment. *Id.* However, where an outside document is (1) attached to the complaint as an exhibit or (2) central to a claim, referred to in the complaint, and undisputedly authentic, the court may rely on it without converting the

1

Plaintiffs to insure their property located at 13555 Garfield St., Thornton, Colorado 80241 (the Property). ECF No. 20, ¶¶ 12–13. The Policy was in effect from April 8, 2024, to April 8, 2025. ECF No. 2-1 at 2. Among other provisions, the Policy contained the "Roof Replacement Cost Coverage for Windstorm and Hail" endorsement (the Endorsement), which provided coverage for "damage to a roofing system," including "shingles," "caused by Windstorm or Hail." ECF No. 20, ¶ 14; ECF No. 2-1 at 67–69.[3]

On or about May 30, 2024, a hailstorm damaged the Property, including the roof. ECF No. 20, ¶ 15. Plaintiffs filed an insurance claim (Claim One), and Defendant assigned an adjuster, who found storm-related damage to the Property's gutters, window screens, and lattice work, but only non-storm-related (i.e., non-hail) damage to, among other items, the roof. *Id.*, ¶ 16–19. Defendant determined that the losses amounted to $1,104.97, which was below Plaintiffs' deductible. *Id.*, ¶ 20. Plaintiffs hired a public adjuster, who found "widespread hail damage" to the roof shingles.[4] *Id.*, ¶ 22. Plaintiffs submitted the

---

motion into one for summary judgment. *Id.* Although Plaintiffs attached the Policy, ECF No. 2-1, to their original Complaint, ECF No. 2, they failed to attach it to the Amended Complaint. ECF No. 20. The Policy, however, is central to Plaintiffs' claims and referred to throughout the Amended Complaint. *Id.* Defendant does not appear to dispute its authenticity, as Defendant refers to the Policy throughout its dismissal briefing, *see* ECF Nos. 22, 28, and specifically cites it. ECF No. 22 at 6 n.1 (citing ECF No. 2-1 and referring to it as the "Certified Policy"). Accordingly, the Court cites and relies on the Policy in adjudicating Defendant's motion, consistent with the parties' own briefing, without converting the motion into a one for summary judgment. *See Gee*, 627 F.3d at 1186.

[3] The Endorsement specifically provides that "[i]f the damaged roofing system is repaired or replaced within 12 months after the date of loss," Defendant will pay the least of: "(a) [Defendant's] cost to repair or replace the property based on current construction costs; (b) the amount [the insured] spent to repair or replace the property based on current construction costs; or (c) the limit shown in the Declarations" pages, less any amount paid for interim repairs or replacement. ECF No. 2-1 at 67. The Endorsement also provides that "[i]f the roofing system is not repaired or replaced within 12 months after the date of loss, Defendant will pay the least of the: "(a) value of damaged property; (b) change in value of damaged property directly due to the loss; (c) cost to repair damaged property; (d) cost to replace damaged property determined using the roof payment Schedule . . . ; or (e) limit shown in the Declarations" pages. *Id.*

[4] A "public adjuster" is a licensed individual who, for compensation, "acts or aids" "on behalf of an insured in negotiating for, or effecting, the settlement" of first-party insurance claims. C.R.S. § 10-2-103(8.5)(a).

2

public adjuster's photos and estimate to Defendant, but Defendant continued to deny coverage for the roof as non-storm related. *Id.*, ¶ 22–23.

The Policy also covered losses caused by water.[5] On or about July 21, 2024, the Property sustained interior water damage. *Id.*, ¶ 30. Plaintiffs filed an insurance claim with Defendant (Claim Two), and Defendant paid Plaintiffs $2,337.19 for Claim Two. *Id.*, ¶¶ 31–35. Plaintiffs again hired a public adjuster because they believed that Defendant's payment "severely underestimated" the cost of the water-damage repairs. *Id.*, ¶¶ 33–35. Plaintiffs submitted the public adjuster's estimate to Defendant, but Defendant failed to render full payment for Claim Two. *Id.* at ¶ 35.

In their Amended Complaint, Plaintiffs assert four causes of action: breaches of contract related to (1) Claim One and (2) Claim Two; (3) statutory bad-faith; and (4) common-law bad-faith. *See id.*, ¶¶ 45–75. Defendant seeks dismissal of the Amended Complaint on the grounds that it "fails to state claims for breach of contract," "unreasonable delay/denial," and "bad faith breach of contract." ECF No. 22 at 14.

## II.   LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, is implausible on its face. *Mengert v. United States*, 120 F.4th 696, 711 (10th Cir. 2024) (citing *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019)). A claim is facially plausible if

---

[5] Specifically, the Policy covers water losses that include those caused by water- and sewer-utility lines, ECF No. 2-1 at 21, outside water sources, *id.* at 59–61, and hidden water. *Id.* at 63–64.

the plaintiff pleads factual allegations that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Detailed factual allegations are not required, but the complaint must provide enough factual detail to give a defendant "fair notice" of the claim and "the grounds upon which it rests." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). "Threadbare recitals" of a claim's elements and "conclusory statements" do not suffice. *Iqbal*, 556 U.S. at 678. A court must read a plaintiff's allegations in the context of their entire complaint. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022).

### III.   ANALYSIS

At root, Defendant argues that Plaintiffs' Amended Complaint contains only conclusory statements and insufficient factual allegations to render their claims plausibly pleaded. *See generally* ECF Nos. 22, 28. Plaintiffs, in essence, argue that they have pleaded sufficient factual allegations to survive Defendant's dismissal motion. *See generally* ECF No. 27. Thus, the resolution of Defendant's motion turns on a fundamental question: whether the Amended Complaint contains factual allegations sufficient to show that Defendant is plausibly liable as alleged in each of Plaintiffs' four claims. *See Iqbal*, 556 U.S. at 678. The Court concludes that the Amended Complaint alleges sufficient factual content to state plausible claims for relief as to each of Plaintiffs' four claims.

### A.   Plaintiffs' Breach of Contract Claims

Defendant moves to dismiss Plaintiffs' breach of contract claims, regarding Claims One and Two, on the grounds that Plaintiffs failed to plausibly allege that Defendant

4

breached the Policy and that Plaintiffs suffered damages. ECF No. 22 at 7. The Court disagrees with Defendant.

Under Colorado law, to state a claim for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) plaintiff's performance or justification for nonperformance; (3) defendant's breach of a duty to perform; and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

   1. Claim One

Defendant argues that Plaintiffs failed to identify "any policy provision allegedly breached" and that Plaintiffs did not plausibly allege that Defendant's estimates omitted damage caused by the May 30, 2024 storm. ECF No. 22 at 7. The Court disagrees.

Plaintiffs' Amended Complaint contains the following well-pleaded allegations, which the Court accepts as true, *see Smith*, 561 F.3d at 1098:

- The May 30, 2024 storm caused hail damage to, among other items, the Property's shingled roof. ECF No. 20, ¶ 15;

- The Policy contained specific coverage (i.e., the Endorsement) for damage to shingled roofs caused by hail damage. ECF No. 20, ¶¶ 15–16; ECF No. 2-1 at 67;

- Defendant's adjuster denied that the shingles suffered any hail damage, and Defendant did not cover Plaintiffs' hail-damaged roof. *Id.*, ¶¶ 17–20;

- Plaintiffs' public adjuster produced an estimate that showed "widespread hail damage to Plaintiffs' shingled roof." *Id.*, ¶¶ 21–22;

- Plaintiffs provided their adjuster's estimate to Defendant, which "refus[ed] to render full insurance benefits" in violation of the Policy's terms. *Id.*, ¶¶ 23–25;

- The public adjuster estimated total Property damage at $68,742.16. ECF No. 20, ¶ 22; and

- Defendant estimated damages at only $1,104.97, provided no basis for denying

5

coverage for the hail-damaged roof, and did not adequately investigate after Plaintiffs submitted the public adjuster's estimate. *Id.*, ¶¶ 17, 20, 26–28.

These factual allegations, and the reasonable inferences drawn from them, are sufficient to plausibly allege that Defendant breached the Policy, which caused Plaintiffs damages. *See Iqbal*, 556 U.S. at 678. Plaintiffs plausibly allege that: the Policy required Defendant to cover hail damage to the Property's roof; the roof was hail-damaged; and Defendant failed to cover the damage, in breach of the Policy. Plaintiffs also plausibly allege that Plaintiffs suffered specific, attendant damages, in that Defendant did not pay for the roof's damage that the public adjuster documented and the Policy covered.

The Court concludes that Plaintiffs' allegations plausibly show that Defendant is liable as alleged, *see Iqbal*, 556 U.S. at 678, so the Court denies Defendant's motion vis-à-vis Claim One.[6] *See Mengert*, 120 F.4th at 711.

    2. Claim Two

Next, Defendant argues, with respect to Plaintiffs' second breach of contract claim, that Plaintiffs similarly failed to identify either a Policy provision that was breached or any damages that resulted from a breach. ECF No. 22 at 7. The Court again disagrees.

Plaintiffs' Amended Complaint contains the following well-pleaded allegations, which the Court accepts as true, *see Smith*, 561 F.3d at 1098:

---

[6] The case Defendant cites to support its arguments related to both breach of contract claims does not compel a different conclusion. In *Ryals v. American Family Insurance Co*mpany, the plaintiff alleged that the defendant was obligated to provide coverage for a hailstorm-damaged roof. No. 20-CV-02736-NYW, 2021 WL 848195, at *3 (D. Colo. Mar. 5, 2021). In granting the 12(b)(6) motion, the court reasoned that the plaintiff failed to identify (1) a specific provision of the policy that the defendant allegedly breached; and (2) the amount the insurer paid. *Id.* at 3–5. Here, Plaintiffs: (1) identified specific Policy language that Defendant allegedly breached by bringing the Policy (as discussed above) in front of the Court; and (2) specifically pleaded how much Defendant valued Claim One. Thus, *Ryals* is inapposite here and fails to persuade that dismissal is proper.

6

- The Property suffered water damage on or about July 21, 2024. ECF No. 20, ¶ 30;

- The Policy had several specific provisions that covered water damage. *Id.*, ¶ 39; ECF No. 2-1 at 21, 59–61, 63–64;

- Defendant assigned an adjuster, who inspected the Property, and Defendant paid Plaintiffs $2,337.19 for Claim Two. ECF No. 20, ¶ 32–33;

- Plaintiffs hired a public adjuster and determined that Defendant's settlement of Claim Two "severely underestimated . . . the repairs necessary to restore Plaintiffs' Property." *Id.*, ¶¶ 34–35; and

- Defendant "refus[ed] to render full payment" for Claim Two, despite Plaintiffs' submission of the public adjuster's estimate for Defendant's review and "a sworn statement of proof of loss." *Id.*, ¶¶ 36–39.

These factual allegations, and the reasonable inferences drawn from them, are sufficient to plausibly allege that Defendant breached the Policy, which caused Plaintiffs damages. *See Iqbal*, 556 U.S. at 678. Plaintiffs plausibly pleaded that Defendant had an obligation to cover water damage under specific Policy provisions. Plaintiffs also plausibly pleaded that, based on the discrepancy between the public adjuster's estimate and Defendant's payment, Defendant breached this obligation. Further, Plaintiffs pleaded facts that, when read in the context of the entire complaint, *see Chilcoat*, 41 F.4th at 1207, allow a reasonable inference that Plaintiffs suffered damages, i.e., the difference between the public adjuster's estimate and the amount Defendant paid for Claim Two.[7]

When viewed in the light most favorable to Plaintiffs and taken as true, these allegations are not threadbare recitals nor merely conclusory statements. *See Iqbal*, 556

---

[7] Although Plaintiffs did not plead the specific amount of the public adjuster's estimate, they did provide it to Defendant, so Defendant is on fair notice about Plaintiffs' claim. *See Twombly*, 550 U.S. at 555. And regardless, Plaintiffs have pleaded the public adjuster's estimate exceeded Defendant's, underscoring that they have suffered damages, even if, at this stage, Plaintiffs have not specified a precise dollar amount.

7

U.S. at 678. Thus, the Court concludes that Plaintiffs' well-pleaded facts are sufficient to plausibly allege Defendant's liability, s*ee id.*, and so Plaintiffs' second breach of contract claim survives Defendant's motion to dismiss. *See Mengert*, 120 F.4th at 711.

### B.  Plaintiffs' Statutory Bad-Faith Claim

Defendant next argues that the Amended Complaint "includes no facts establishing the additional amounts [Plaintiffs] claimed were covered or owed," ECF No. 28 at 5, and so Plaintiffs' "conclusory statements" cannot support the elements of a statutory bad-faith claim. ECF No. 22 at 9. The Court disagrees.

To state a statutory bad-faith claim, a plaintiff must allege that an insurer delayed or denied payment of a claim unreasonably, i.e., without a reasonable basis. C.R.S. § 10-3-1115(1)(a)–(b). Reasonableness is determined objectively and based on industry standards, and it is ordinarily a question of fact for the jury. *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1003 (D. Colo. 2020) (internal citations omitted).

Here, as described above, Plaintiffs plausibly pleaded a breach of contract claim for failure to cover a hail-damaged roof.[8] These well-pleaded factual allegations, and the reasonable inferences drawn from them, are sufficient to plausibly allege Defendant's liability for statutory bad faith, i.e., that Defendant denied payment of a claim without a reasonable basis. *See Iqbal*, 556 U.S. at 678. Although Plaintiffs do not specifically allege the industry standard from which Defendant allegedly deviated, because the Court must read the allegations in the context of the entire complaint, *see Chilcoat*, 41 F.4th at 1207,

---

[8] Plaintiffs statutory and common-law bad-faith claims entail facts related to both of their breach of contract claims. However, in resolving Defendant's motion as it pertains to Plaintiffs' bad-faith claims, the Court discusses only the facts related to Claim One since its allegations, when incorporated into Plaintiffs' bad-faith claims, are sufficient to plausibly allege Defendant's liability vis-à-vis the bad-faith claims.

8

Plaintiffs' well-pleaded allegations regarding Claim One allow the Court to infer that Plaintiffs plausibly allege that denying coverage for the hail-damaged roof without explanation or adequate investigation, when the Policy expressly covered it, runs counter to industry standards and is therefore unreasonable. *See Iqbal*, 556 U.S. at 678; *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1227–28 (10th Cir. 2016) (holding that a jury could have reasonably found that insurer's failure to provide a reasonable explanation for denial and failure to investigate before denial was "unreasonable" under § 10-3-1115).

Additionally, reasonableness in this context is a question of fact, *see Thompson*, 457 F. Supp. 3d at 1003, bolstering the Court's conclusion that resolution of Defendant's motion at this state of litigation—and dismissal of Plaintiffs' claim—is improper. *See Millennium Funding, Inc. v. Priv. Internet Access, Inc.*, No. 21-CV-01261-NYW-SKC, 2022 WL 7560395, at *22 (D. Colo. Oct. 13, 2022) (citation omitted) (examining a contract dispute and refusing to construe allegations in favor of the movant because questions of fact are "to be resolved by the jury, not the court" in the context of a Rule 12(b)(6) motion).

Thus, the Amended Complaint contains sufficient factual allegations that, when combined with the reasonable inferences drawn from them, plausibly satisfy the elements of Plaintiff's statutory bad-faith claim, *see Iqbal*, 556 U.S. at 678, and so the Court denies Defendant's motion as it relates to Plaintiffs' third claim.[9] *See Mengert*, 120 F.4th at 711.

---

[9] Defendant again relies on *Ryals* regarding Plaintiffs' statutory bad-faith claim, ECF No. 22 at 10, but it remains distinguishable. *See* 2021 WL 848195, at *7–8 (reasoning that, as related to their bad-faith claims, the plaintiff failed to identify: (1) "specific deficiencies" regarding the insurer's evaluation or estimate; and (2) any policy or regulatory provision that required repair). Defendant's other cases are likewise distinguishable. *See, e.g.*, *El Dueno, LLC v. Mid-Century Insurance Company*, No. 24-1110, 2025 WL 1540329 (10th Cir. May 30, 2025) (examining a summary judgment, not a Rule 12(b)(6), decision); *Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 593 (Colo. App. 1988) (affirming summary judgment where the

### C. Plaintiffs' Common-Law Bad-Faith Claim

Finally, Defendant argues that Plaintiffs pleaded only "bare legal conclusions, without any specific factual allegations," to support their common-law bad-faith claim. ECF No. 22 at 11. The Court disagrees.

Common-law bad-faith claims require a Plaintiff to prove the same elements as statutory bad-faith claims, plus one additional element: the insurer knowingly or recklessly disregarded the fact that their conduct was unreasonable. *Thompson*, 457 F. Supp. 3d at 1003 (internal citations omitted).

Plaintiffs alleged, and the Court takes as true, that Plaintiffs retained a public adjuster, who produced an estimate and submitted it to Defendant. ECF No. 20, ¶¶ 22, 35. This, together with Plaintiffs' allegations that plausibly alleged Defendant's unreasonableness and liability under Plaintiffs' statutory bad-faith claim, allow the Court to reasonably infer that Defendant knew or recklessly disregarded the fact that their conduct was unreasonable. *See Iqbal*, 556 U.S. at 678.

Thus, Plaintiffs' fourth claim is facially plausible, and its dismissal is improper. *See Iqbal*, 556 U.S. at 678; *Mengert*, 120 F.4th at 711.

### IV.   CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion to Dismiss Amended Complaint as to each of Plaintiffs' four claims. ECF No. 22.

---

plaintiff failed to allege facts that the insurer was liable for bad faith, in part, because its duty to negotiate in good faith was tolled by arbitration).

10

Dated this 1st day of August 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge